UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20088-CR-GAYLES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CLAYTON L MANHERTZ,

    Defendant.

_____/

**<u>SENTENCING MEMORANDUM</u>**

Clayton Manhertz, by and through undersigned counsel, respectfully submits the following sentencing memorandum to aid the Court in fashioning a sentence that is sufficient but not greater than necessary to serve the goals of sentencing. 18 U.S.C. § 3553(a).

Mr. Manhertz grew up in abject poverty in Saint Thomas, Jamaica. He was raised by his mother in a home with no running water or electricity,[1] and often lacked even the most basic necessities. At times, Clayton's mother, who worked washing other families' clothes, was so financially desperate and destitute that she had to send Clayton's siblings away to live with their respective fathers. Clayton's own father, who worked cutting sugarcane, was not in his life and provided no support—financially, emotionally, or otherwise. Desperate for help, Clayton would sometimes

---

[1] The PSI erroneously reports that Mr. Manhertz's childhood home had running water and electricity; it did not.

1

go out looking for his father, who he knew lived nearby. To no avail, Clayton was left without even the most basic necessities, like food, and experienced what it felt like to go hungry throughout his childhood.

He was also forced to leave school early to try to find work to support himself and try to help his mother. As a result, Clayton never learned to read or write and remains illiterate to this day. This also left him out in the streets, as a child, vulnerable to being brutally attacked and robbed of his meager belongings. One of the worst attacks happened when Clayton was just 13 or 14 years old; a man beat him in the head with a rock, leaving him unconscious in the street.

Despite being essentially on his own since he was 13 or 14, Clayton did his best to survive. As a teenager, he poured his time and energy into finding work—odd jobs, day labor, whatever he could find. And that work, when he found it, was not easy. As a child and into adulthood Clayton often did hard manual labor, like mixing and carrying cement, construction, making and burning coal, and picking fruit to sell.

As an adult, Mr. Manhertz has not fared much better, though his perseverance has remained. He has worked mostly in manual labor and as a fisherman, making meager earnings to get by. Most of his adult life, and leading up to his arrest, he has lived in a one-room hut—a make-shift shelter made out of plywood with no running water, electricity, or a bathroom.

Additionally, whether a result of his head injury as a teenager or other causes, and compounded by his lack of access to basic education, Mr. Manhertz struggles with communication, memory, and other cognitive/intellectual skills. When asked, he

sometimes has a hard time communicating even basic information, like his birthday. And while that certainly does not excuse his conduct in this case—for which he has unequivocally accepted responsibility—it does provide important context for the Court to understand Mr. Manhertz as a person, and to understand his actions and his relative culpability on a deeper level. *See* USSG §§ 5K2.13 & 5H1.3 (recognizing that a defendant's mental and emotional conditions, including impaired mental capacity, can be a basis for a downward departure); *see also* 18 U.S.C. § 3553(a)(1).

That includes Mr. Manhertz's limited role in, and understanding of, the scope and structure of the criminal activity, as well as his vulnerability and susceptibility to the negative influence of others. As noted in his PSI objections, Mr. Manhertz played a relatively minor role in the drug trafficking venture. He did not serve as a captain, master, or in any position with any meaningful decision-making capacity. Nor did he have any involvement in the planning or organizing of the criminal activity.

Mr. Manhertz's challenges and limitations also shed a different light on his one prior conviction, which involved the attempted transportation of marijuana for which he and his codefendants received a sentence of 12 months imprisonment (time served). In that case, Mr. Manhertz was a deckhand acting at the direction of the master of the vessel, who had recruited him just the night before the trip—and who had previously helped him find (legitimate) work in the past. And while the Court can certainly take Mr. Manhertz's past into account, it must do so in context—

3

including both Mr. Manhertz's extreme hardships and his limitations in terms of memory, communication, and cognitive/intellectual functioning.

Additionally, Mr. Manhertz's one prior conviction has the effect of increasing his guildelines in this case two-fold: first, it raises his criminal history category from I to II, and second, it renders him ineligible for a zero point offender reduction, effectively raising his total offense level by two points. Thus, should the Court sustain the PSI objections, Mr. Manhertz's codefendants will face guideline ranges of 51–63 months imprisonment, while Mr. Manhertz faces guidelines of 70–87 months imprisonment. And while, *in the typical case*, some disparity may be warranted, the disparity is greater than necessary. Moreover, this is *not* a typical. Based on Mr. Manhertz's unique personal characteristics, a sentence in line with that of his codefendants would be sufficient but not greater than necessary to fulfill the goals of sentencing.

If the Court does sentence Mr. Manhertz similarly to his codefendants, within a guideline range of 51–63 months imprisonment, his sentence will still be ***four to five times longer*** than the sentence he received in his one prior case. That is certainly sufficient to meet the goals of sentencing.

Mr. Manhertz is before the Court having taken responsibility for his actions, ready to accept the consequences, and eager to make the most of his time in prison so that he can return home better equipped to support himself and his family. Unfortunately, his mother recently suffered a stroke, and it has been extremely

difficult for Mr. Manhertz to be away from home during this time. It is also difficult on his mother who, despite his limitations, relied on Mr. Manhertz's help and care.

Mr. Manhertz humbly prays that the Court consider the above information in fashioning a sentence that is sufficient but no greater than necessary.

Respectfully Submitted,

HECTOR DOPICO
FEDERAL PUBLIC DEFENDER

By: */s/ Kate Taylor*_____
Kate Taylor
Assistant Federal Public Defender
Special Bar No. A5502484
150 West Flagler Street, Suite 1700
Miami, Florida 33130
Tel: 305-530-7000
Email: kate_taylor@fd.org

5

## CERTIFICATE OF SERVICE

I HEREBY certify that on February 18, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Kate Taylor*
Kate Taylor